# EXHIBIT 1

FILED
2/29/2024 2:29 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L002248
Calendar, W
26622693

Firm ID. #62848

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| NORTHWESTERN MEMORIAL HEALTHCARE, | ) ) ) | SUMMONS |
| Plaintiff, | ) ) | Case No.  2024 L XXXXX |
| v. | ) ) | COMMERCIAL CALENDAR |
| ANTHEM BLUE CROSS AND BLUE SHIELD INC. d/b/a BLUE CROSS AND BLUE SHIELD OF GEORGIA; and DOES 1 THROUGH 25, INCLUSIVE, | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | | |

## ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer: This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date

FILED DATE: 2/29/2024 2:29 PM   2024L002248

Firm ID. #62848

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.**

| | |
|---|---|
| Atty. No:     62848 | Witness:_____ |
| Atty. Name: LAW OFFICES OF STEPHENSON, | |
|                    ACQUISTO & COLMAN, INC. | |
| Atty. For:    Plaintiffs | _____ |
| Address:     20 N. Clark St., Suite 3300 |     DOROTHY BROWN, Clerk of Court |
| City:          Chicago, | |
| State:_       IL | |
| Zip:           60602 | Date of Service: _____ |
| Telephone: (312)-626-1870 | (To be inserted by officer on copy left with |
| Primary Email: mmorrow@sacfirm.com | |
|                      mmctarnaghan@sacfirm.com | Defendant or other person): |

**See Service List Below**

FILED DATE: 2/29/2024 2:29 PM    2024L002248

Firm ID. #62848

FILED DATE: 2/29/2024 2:29 PM   2024L002248

**<u>SERVICE LIST</u>**

BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC
c/o CT Corporation System
289 S Culver Street
Lawrenceville, GA, 30046-4805

Firm ID. #62848

BLUE CROSS AND BLUE SHIELD OF GEORGIA
c/o CT CORPORATION
120 Monument Circle
Indianapolis, IN 46204

ANTHEM BLUE CROSS AND BLUE SHIELD INC
1293 Courtland Ave
Macon, GA, 31204

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 – Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 – Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 – Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 – Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building

2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

○ **Daley Center Divisions/Departments**
Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801

- 4 -   **SUMMONS**

FILED DATE: 2/29/2024 2:29 PM    2024L002248

Firm ID. #62848

    Chicago, IL 60602
    Hours: 8:30 am - 4:30 pm

- ○ Criminal Department
  Richard J Daley Center
  50 W Washington, Rm 1006
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ County Division
  Richard J Daley Center
  50 W Washington, Rm 1202
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Probate Division
  Richard J Daley Center
  50 W Washington, Rm 1202
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ● Law Division
  Richard J Daley Center
  50 W Washington, Rm 801
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Traffic Division
  Richard J Daley Center
  50 W Washington, Lower Level
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

FILED
2/29/2024 2:29 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L002248

FILED DATE: 2/29/2024 2:29 PM    2024L002248

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| NORTHWESTERN MEMORIAL HEALTHCARE | ) | |
| Plaintiff, | ) | Case No. 2024 L XXXXX |
| | ) | |
| v. | ) | COMMERCIAL CALENDAR |
| | ) | |
| ANTHEM BLUE CROSS AND BLUE SHIELD INC. d/b/a BLUE CROSS AND BLUE SHIELD OF GEORGIA; and DOES 1 THROUGH 25, INCLUSIVE, | ) ) ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) ) ) ) ) ) | |

## <u>NORTHWESTERN MEMORIAL HEALTHCARE'S COMPLAINT AT LAW</u>

1. Plaintiff, NORTHWESTERN MEMORIAL HEALTHCARE, (hereinafter "NMHC"), by and through its attorneys, LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, for its Complaint at Law ("Complaint") against ANTHEM BLUE CROSS AND BLUE SHIELD INC. d/b/a BLUE CROSS AND BLUE SHIELD OF GEORGIA, (hereinafter "BCBS OF GA"), and DOES 1 THROUGH 25, INCLUSIVE, upon personal information as to their own activities and upon information and belief as to the activities of others

FILED DATE: 2/29/2024 2:29 PM    2024L002248

and all other matters, and states as follows:

## INTRODUCTION

2.      This is an action against BCBS OF GA for breach of implied-in-fact contract and *quantum meruit* arising from a business relationship between NMHC and BCBS OF GA.  By this action, NMHC seeks compensatory damages, interest, and attorney's fees and costs.

## PARTIES

3.      NORTHWESTERN MEMORIAL HEALTHCARE is a not-for-profit public benefit corporation organized and existing pursuant to the laws of the State of Illinois.  NMHC, through its subsidiaries, DELNOR HOSPITAL, CENTRAL DUPAGE HOSPITAL, AND NORTHWESTERN MEMORIAL HOSPITAL, provided medical care to Patients (as such term is defined herein), who were BCBS OF GA beneficiaries when such medical care was provided.  NMHC has its principal place of operation in the City of Chicago, County of Cook, and State of Illinois and is incorporated in the State of Illinois.

4.      ANTHEM BLUE CROSS AND BLUE SHIELD INC. d/b/a BLUE CROSS AND BLUE SHIELD OF GEORGIA ("BCBS OF GA") is a domestic insurance company, incorporated in Georgia, with its principal place of business in Macon, Georgia.

---

5.     NMHC is unaware of the true names and capacities, whether corporate, associate, individual, partnership or otherwise of defendants DOES 1 through 25, inclusive, and therefore sues such defendants by such fictitious names. NMHC will seek leave of the Court to amend this Complaint to allege its true names and capacities when ascertained.

6.     BCBS OF GA and Does 1 through 25, inclusive, shall be collectively referred to as "BCBS OF GA" or "Defendants."

7.     Defendants, each of them, at all relevant times, have transacted business in the State of Illinois.  The violations alleged within this Complaint have been and are being carried out in the State of Illinois.

8.     NMHC is informed, believes and thereon alleges that at all relevant times each of the Defendants, including the defendants named "Doe," was and is the agent, employee, employer, joint venturer, representative, alter ego, subsidiary and/or partner of one or more of the other defendants, and was, in performing the acts complained of herein, acting within the scope of such agency, employment, joint venture, or partnership authority, and/or is in some other way responsible for the acts of one or more of the other defendants.

## JURISDICTION AND VENUE

9.     Jurisdiction over this matter exists under 735 ILCS 5/2-209 because

FILED DATE: 2/29/2024 2:29 PM          2024L002248

FILED DATE: 2/29/2024 2:29 PM 2024L002248

BCBS OF GA, transacts business in Illinois, and because BCBS OF GA's making and performance of the transactions, and the implied-in-fact contracts at issue are substantially connected with the State of Illinois.

10. Venue is proper in the Circuit Court of Cook County pursuant to 735 ILCS 5/2-101 and 5/2-103 because it is the county in which the transactions occur out of which the cause of action arises.

## FACTUAL BACKGROUND

11. NMHC, between the dates of December 27, 2018 and July 1, 2021, provided medically necessary treatment to the individuals identified on the spreadsheet attached as Exhibit A[1] to this Complaint (and which is incorporated herein by this reference as though set forth in full) (the "Patients") totaling five (5) claims.

12. NMHC is informed and believes and thereon alleges that at all relevant times Patients were enrollees and/or beneficiaries of health plans sponsored, financed, administered, and/or funded by BCBS OF GA.

13. Prior to the dates of service set forth in Ex. A (the "Dates of Service"), NMHC sought and received authorization for treatment from BCBS OF GA.

---

[1] NMHC has limited disclosure of patient identification here pursuant to the privacy provisions of the Health Insurance Portability & Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320 *et seq.*, General Information Privacy Act, 410 ILCS 513/15 – 50; and General Administrative Order 18-1.

BCBS OF GA gave authorization reference numbers and approved the medically necessary services rendered to Patients, and BCBS OF GA approved admission of the Patients.

14.     On the dates of service set forth in Ex. A, NMHC rendered medically necessary services, supplies and/or equipment to Patients until Patients became stable for discharge from NMHC.

15.     NMHC is informed, believes and thereon alleges BCBS OF GA is financially responsible for the medically necessary services, supplies, and/or equipment (including, but not limited to, emergency care) rendered to the Patients on the Dates of Service.

16.     NMHC's usual and customary charges for the medically necessary services, supplies and/or equipment rendered to Patients amounted to $139,573.85.

17.     NMHC timely and properly submitted the bills containing said charges for the medically necessary services, supplies, and/or equipment rendered to Patients to BCBS OF GA for payment.

18.     Rather than properly and fully pay NMHC for the medically necessary services, supplies, and/or equipment NMHC rendered to the Patients, BCBS OF GA underpaid, issuing payment of only $0.00.

19.     BCBS OF GA failed to pay fully and properly NMHC for the

FILED DATE: 2/29/2024 2:29 PM   2024L002248

medically necessary services, supplies, and/or equipment rendered to Patients, despite demands thereof.

20.     BCBS OF GA received premium payments for Patients' enrollment and coverage in BCBS OF GA's respective health plans.

21.     BCBS OF GA unjustly benefitted by not paying fully NMHC for the reasonable value of such services.  BCBS OF GA promised its beneficiaries (including Patients) that it would pay medical providers who provided emergency and necessary medical treatment to those beneficiaries in exchange for Patients' premiums, collected such premiums and then refused despite demands to fully and properly pay NMHC the reasonable and customary value of the medical care rendered to BCBS OF GA's beneficiaries as specified in Ex. A.  BCBS OF GA accepted the services NMHC provided to Patients as demonstrated by acts including but not exclusive to issuing authorizations and collection of premiums.

22.     BCBS OF GA further unjustly and directly benefitted when it caused NMHC to treat its beneficiaries, Patients, thus improving BCBS OF GA's patient-population risk pool as Patient was now healthier and less of a cost exposure risk to BCBS OF GA's insurance funds and allowing BCBS OF GA's profits to continue with further guarantee that a healthier and still living Patient would ensure that the BCBS OF GA would be allowed to collect future premiums for Patients'

FILED DATE: 2/29/2024 2:29 PM   2024L002248

enrollment in BCBS OF GA's health plan.

23.     BCBS OF GA further unjustly and directly benefited when it caused NMHC to treat its beneficiaries, Patients, in the following ways:

a)  Improved Health Outcomes – BCBS OF GA has a vested interest in keeping their enrollees, like Patients, healthy, as healthier individuals require less medical care and incur fewer costs.  By encouraging their enrollees, like Patients, to seek medical care when needed, including hospitalization, when necessary, BCBS OF GA helped prevent Patients' illness from becoming more serious and costly for BCBS OF GA.

b)  Better Customer satisfaction – when Patients received quality care at NMHC, Patients were more satisfied with their health insurance coverage which led to increased loyalty and retention rates for BCBS OF GA.

c)  Increased Market Share – by offering competitive coverage that includes access to high-quality hospitals, like NMHC, BCBS OF GA was able to attract new customers and retain existing ones.  This helped them gain a larger share of the market which led to increased profits and better bargaining power with healthcare providers.

d)  Cost Savings – with an improved health outcome of Patients, BCBS OF GA saved money by avoiding further future costly treatments and is

therefore able to keep premiums lower for their customers, further increasing

BCBS OF GA's attractiveness and competitiveness in expanding its patient-

pool.

24.     As a direct and proximate result of BCBS OF GA's wrongful conduct,

NMHC has suffered damages in an amount to be proven at trial but not less than

the sum of $67,997.65 exclusive of interest.

## COUNT I – BREACH OF IMPLIED-IN-FACT CONTRACT

(Against Defendant BCBS OF GA and DOES 1 through 25, inclusive)

25.     NMHC incorporates by reference and re-alleges paragraphs 1-24 of

this Complaint here as though set forth in full.

26.     This action is founded upon a written contract (the "Contract"),

effective January 1, 2003, between NMHC and Health Care Services Corporation

d/b/a/ Blue Cross Blue Shield of Illinois ("HCSC") – a non-party to this action.

Among other things, the Contract obligated NMHC to medically treat individuals

who were certain beneficiaries of non-HCSC Blue Cross health plans.

Specifically, the Contract obligated NMHC to medically treat individuals

belonging to health plans financed, sponsored, and/or administered by member

companies belonging to the national Blue Cross Blue Shield Association, of which

BCBS OF GA is one such member.

2024L002248

FILED DATE: 2/29/2024 2:29 PM

FILED DATE: 2/29/2024 2:29 PM    2024L002248

27.     Although BCBS OF GA was not a signatory to or obligee of the Contract, the Contract nonetheless bound NMHC to treat BCBS OF GA's beneficiaries.  The Contract also obligated NMHC to accept as payment in full monies received from Blue Cross Blue Shield Association member companies (such as BCBS OF GA) that were made at the discounted rates found within the Contract.

28.     At all relevant times, the Contract between NMHC and HCSC bound NMHC to treat beneficiaries not only of health plans financed, sponsored, and/or administered by HCSC, but also for beneficiaries of health plans financed, sponsored, and/or administered by member companies of the national Blue Cross Blue Shield Association.  One such member company of said association is BCBS OF GA.  Thus, even though BCBS OF GA never signed the Contract nor is obligated under the Contract, NMHC must nevertheless medically treat BCBS OF GA members and accept payment, in full, from such member companies, with the payment received conforming to the rates found within the Contract.

29.     All BCBS OF GA needed do to take advantage of such medical treatment and discounted rates on behalf of its members/beneficiaries was to issue a "Blue Card" program identification card.  The members/beneficiaries could then present their "Blue Card" program identification card to NMHC at admission,

FILED DATE: 2/29/2024 2:29 PM    2024L002248

which signaled to NMHC that it must medically treat such patient pursuant to the terms of the Contract and must accept payments at the discounted rates found in the Contract even though BCBS OF GA was not a signatory to the Contract. Otherwise, NMHC would be in violation of tits duties owed to HCSC.

30.     In this way — by conduct alone and with no express agreement between them — an implied-in-fact contract arose between NMHC and BCBS OF GA each time one of the Patients presented to NMHC their BCBS OF GA-issued "Blue Card" program identification card and/or otherwise identified themself as being a member/beneficiary of a health plan financed, sponsored, and/or administered by a member company of the national Blue Cross Blue Shield Association.

31.     Each of the Patients specified in Exhibit A presented a "Blue Card" program identification card issued by BCBS OF GA and/or otherwise identified themself as belonging to a health plan financed, sponsored, and/or administered by BCBS OF GA at the time of their hospital stay at NMHC on the Dates of Service.

32.     Accordingly, each time one of the Patients sought medical treatment at NMHC and so identified themself, an implied-in-fact contract arose in which NMHC agreed to render to that Patient all medically necessary services, supplies, and/or equipment needed by that individual and secondarily agreed to accept as

FILED DATE: 2/29/2024 2:29 PM 2024L002248

payment, in full, monies received from BCBS OF GA that were in conformance to the discounted rates found in the Contract. In return, BCBS OF GA agreed to pay for such care, albeit at the appropriate discounted rate regarding such care.

33. NMHC's usual and customary charges for rendering the medically necessary services, supplies, and/or equipment to the Patients set forth in Exhibit A, amounted to $139,573.85. At the rates found within the Contract, BCBS OF GA should have paid an aggregate amount of $67,997.65. However, BCBS OF GA only paid $0.00, leaving a deficit of $67,997.65 amounted to a breach of its implied-in-fact contracts with NMHC.

34. No express written contract between BCBS OF GA and NMHC existed to prescribe payment for the medically necessary services, supplies, and/or equipment rendered to Patients and NMHC did not perform those services gratuitously. Rather, BCBS OF GA knew and understood that NMHC rendered such treatment with the expectation of being paid under the Contract and through the Blue Card program.

35. Prior to the treatment rendered by NMHC, through industry custom and practice, BCBS OF GA impliedly agreed, promissorily impliedly expressed and understood that NMHC would render medically necessary care to BCBS OF GA beneficiaries, submit bills for such care to BCBS OF GA, and that BCBS OF

FILED DATE: 2/29/2024 2:29 PM  2024L002248

GA would pay the rates under the Contract to NMHC for the necessary medical treatment rendered to Patients, rather than Patients themselves (except for co-payments, deductibles, and co-insurance amounts, in any).

36.     Specifically, prior to the dates that NMHC admitted Patients to its facilities for medical services, NMHC contacted BCBS OF GA to verify Patients' healthcare eligibility under a BCBS OF GA health plan, to obtain authorization from BCBS OF GA for the medical services rendered and to be rendered, and to establish its right to be paid by BCBS OF GA the rates under the Contract for such care.  In response, BCBS OF GA represented that Patients were beneficiaries of one of BCBS OF GA's health plans, provided the authorization numbers incorporated in Ex A, and approved admissions of the Patients.

37.     At no time did BCBS OF GA represent that it would not pay the discounted rates under the Contract to NMHC for the necessary medical treatment rendered to Patients.

38.     Through NMHC's treating the Patients, NMHC's initiating contact with BCBS OF GA as described above, and BCBS OF GA's instructing the Patients to present their BCBS OF GA-issued "Blue Card" membership identification to NMHC, Plaintiff and Defendant entered into an implied-in-fact contract.  The Contract was also formed through industry custom and practice, as

well as Plaintiff and Defendant's prior and on-going course of conduct *vis-à-vis* the "Blue Card" program. Prior course of conduct included, among other things:

   a)  BCBS OF GA's issuance of identification cards to Patients;

   b)  BCBS OF GA's instructing Patients to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for;

   c)  NMHC communicating with BCBS OF GA to ask for authorizations to render medical care to Patients and BCBS OF GA issuing authorizations to NMHC for such care;

   d)  BCBS OF GA communicating to NMHC the medical eligibility benefits for Patients without advising NMHC that BCBS OF GA would not make full payment of the discounted rates under the Contract for the services to be provided to Patients;

   e)  BCBS OF GA sending written approvals to NMHC for the specified medical services for Patients;

   f)  BCBS OF GA requesting that NMHC send BCBS OF GA clinical information and medical records.

   39.   In addition, prior course of conduct by BCBS OF GA included NMHC submitting claims to BCBS OF GA and in response, BCBS OF GA would

properly pay the discounted rates under the Contract for those claims. Over the last five (5) years, NMHC has billed numerous claims and BCBS OF GA has satisfactorily paid on a number of claims submitted by NMHC in the near identical manner and method as the facts alleged herein.

40.     BCBS OF GA directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that NMHC perform those services on Patients who were beneficiaries of BCBS OF GA, thus fulfilling BCBS OF GA's obligation to secure medically necessary healthcare for its beneficiaries. When Patients received those services, the express insurance coverage agreement made between BCBS OF GA and Patients was satisfied and BCBS OF GA was able to retain rightfully the premiums paid on behalf of Patients for enabling Patients to receive the medical care performed by NMHC. Further, NMHC directly conferred a benefit upon BCBS OF GA when it helped BCBS OF GA make good on promises BCBS OF GA made to its own members/beneficiaries that it would arrange for them to receive timely medical care, when necessary, at a first-rate medical facility.

41.     NMHC provided medically necessary care to BCBS OF GA beneficiaries as described above.

42.     NMHC properly billed BCBS OF GA for the medically necessary services provided to Patients as listed in Ex. A.

43.     BCBS OF GA breached the implied-in-fact contract by paying only $0.00, resulting in an aggregate underpayment of $242,886.26, per the discounted rates under the Contract, or the medical services performed by NMHC.

44.     NMHC performed all conditions required on its part to be performed in accordance with the terms and conditions of the implied-in-fact contract.

45.     BCBS OF GA breached the implied-in-fact contract by underpaying NMHC for the medically necessary services, supplies and/or equipment rendered or supplied to Patients.

46.     As a direct and proximate result of BCBS OF GA's breach of the implied-in-fact contract, NMHC suffered damages in an amount to be proven at trial but not less than the sum of $242,886.26, exclusive of interest.

47.     WHEREFORE, NMHC prays this Court enter judgment in its favor and against BCBS OF GA as follows:

a)   For the principal sum of $242,886.26;

b)  For interest on such principal sum at the rate of 9% per annum, pursuant to 215 ILCS 5/368(a)(c) and 815 ILCS 205/4, or in the alternative, for interest on such principal sum at the rate of 5% per annum, pursuant to 815

ILCS 205/2 and;

    c) For such other and further relief as the Court deems just and proper.

## COUNT II – QUANTUM MERUIT (IN THE ALTERNATIVE)

(Against Defendant BCBS OF GA and DOES 1 through 25, inclusive)

48.     NMHC incorporates by reference and re-alleges paragraphs 1-24 of this Complaint here as though set forth in full.

49.     On the dates of service set forth in Ex. A, NMHC provided emergency and/or medically necessary care to Patients.

50.     In the alternative, assuming *arguendo* that it is determined that no express or implied-in-fact contract between BCBS OF GA and NMHC existed, and/or that such a contract cannot be enforced as to the payment for the medically necessary services, supplies and/or equipment rendered to Patients, Plaintiff should nevertheless be fully paid under the common law doctrine of *quantum meruit*.

51.     NMHC did not perform these services gratuitously. Rather, BCBS OF GA, by its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, knew and understood that NMHC rendered such treatment with the expectation of being paid.

52.     Prior to the treatment rendered by NMHC to Patients, through industry custom and practice, BCBS OF GA impliedly agreed and understood that

NMHC would render medically necessary services to BCBS OF GA beneficiaries, submit bills for such care to BCBS OF GA, and that BCBS OF GA would pay the usual and customary value to NMHC for the necessary medical treatment rendered to Patients, rather than Patients themselves (except for co-payments, deductibles, and co-insurance amounts, in any).

53.     Specifically, prior to the dates that NMHC admitted Patients to its facilities for medical services, NMHC contacted BCBS OF GA to verify Patients' healthcare eligibility under a BCBS OF GA health plan, to obtain authorization from BCBS OF GA for the medical services rendered and to be rendered, and to establish its right to be paid by BCBS OF GA the usual and customary value for such care.  In response, BCBS OF GA represented that Patients were beneficiaries of one of BCBS OF GA's health plans, provided authorization numbers incorporated herein, and approved admission of Patients.

54.     At no time did BCBS OF GA represent that it would not pay the usual and customary value to NMHC for the necessary medical treatment rendered to Patients and at no time did NMHC represent that it would perform the services gratuitously.

55.     By treating Patients and initiating contact with BCBS OF GA as described above, NMHC provided a benefit to BCBS OF GA and BCBS OF GA

FILED DATE: 2/29/2024 2:29 PM   2024L002248

failed to compensate properly NMHC for that received benefit, despite the prior and on-going course of conduct between NMHC and BCBS OF GA.  Prior course of conduct included, among other things:

a)  BCBS OF GA's issuance of identification cards to Patients;

b)  BCBS OF GA's instructing Patients to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for;

c)  NMHC communicating with BCBS OF GA to ask for authorization to render medical care to Patients and BCBS OF GA issuing authorization to NMHC for treatment for that care;

d)  BCBS OF GA communicating to NMHC the medical eligibility benefits for Patients without advising NMHC that BCBS OF GA would not make full payment of the usual and customary value of the services to be provided to Patients;

e)  BCBS OF GA sending written approval to NMHC for the specified medical services for Patients;

f)  BCBS OF GA requesting that NMHC send BCBS OF GA clinical information and medical records.

56.    In addition, prior course of conduct by BCBS OF GA included

FILED DATE: 2/29/2024 2:29 PM    2024L002248

NMHC submitting claims to BCBS OF GA and in response, BCBS OF GA would properly pay the usual and customary value of those claims. Over the last five (5) years, NMHC have billed numerous claims and BCBS OF GA has satisfactorily paid on a number of claims submitted by NMHC in the near identical manner and method as the facts alleged herein.

57.     In addition, BCBS OF GA pre-verified Patients' coverage and eligibility and authorized the treatments.

58.     BCBS OF GA's authorizations for the treatments were implied requests to NMHC to perform those services on behalf of Patients.

59.     NMHC rendered such treatments after the implied requests for such services by BCBS OF GA and NMHC intended those services to benefit, among others, BCBS OF GA.

60.     BCBS OF GA directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that NMHC perform those services on Patients who were beneficiaries of BCBS OF GA, thus fulfilling BCBS OF GA's obligation to secure medically necessary healthcare for its beneficiaries. When Patients received those services, the express insurance coverage agreement made between BCBS OF GA and Patients was satisfied and BCBS OF GA was

FILED DATE: 2/29/2024 2:29 PM
2024L002248

able to retain rightfully the premiums paid on behalf of Patients for enabling

Patients to receive the medical care performed by NMHC. Further, NMHC

directly conferred a benefit upon BCBS OF GA when it helped BCBS OF GA

make good on promises BCBS OF GA made to its own members/beneficiaries that

it would arrange for them to receive timely medical care, when necessary, at a

first-rate medical facility.

61.     NMHC provided medically necessary care to the BCBS OF GA

beneficiaries as described above.

62.     NMHC properly billed BCBS OF GA for the medically necessary

services provided to Patients as listed in Ex. A.

63.     NMHC is informed and believes and alleges thereon that BCBS OF

GA expressly instructed its beneficiaries (including Patients) to seek medical care

in an emergency from the nearest medical provider and for such beneficiaries to

tell the emergency medical provider to send BCBS OF GA the bills for such care

for payment by BCBS OF GA (except for co-payments, deductibles and co-

insurance amounts, if any).

64.     After NMHC rendered the care specified in Ex. A to Patients, NMHC

properly and timely billed BCBS OF GA for such care.

65.     The reasonable value of the medical care provided was and is the

usual and customary charges of those services that is the total billed charges in the

bills submitted to BCBS OF GA by NMHC for $139,573.85. BCBS OF GA paid

only $0.00, leaving a deficit of $139,573.85 owed to NMHC.

66.     Despite demands thereon, BCBS OF GA has refused to pay fully

NMHC for the medical care rendered to Patients as set forth in Exhibit A.

67.     NMHC did not perform these services gratuitously, but rather

expected to be paid the reasonable and customary value for such services which

amounts to $139,573.85.

68.     BCBS OF GA unjustly benefitted by not paying fully NMHC for the

reasonable value of such services. BCBS OF GA promised its beneficiaries

(including Patients) that it would pay medical providers who provided emergency

and necessary medical treatment to those beneficiaries in exchange for Patients'

premiums, collected such premiums and then refused despite demands to fully and

properly pay NMHC the reasonable and customary value of the medical care

rendered to BCBS OF GA's beneficiaries as specified in Ex. A. BCBS OF GA

accepted the services NMHC provided to Patients as demonstrated by acts

including but not exclusive to issuing authorizations and collection of premiums.

69.     As a direct and proximate result of BCBS OF GA's misconduct,

NMHC has suffered damages in an amount to be proven at trial but not less than

the sum of $139,573.85, exclusive of interest.

70.     WHEREFORE, NMHC prays this Court enter judgment in its favor and against BCBS OF GA as follows:

a)   For the principal sum of $139,573.85

b)   For interest on such principal sum at the rate of 9% per annum, pursuant to 215 ILCS 5/368(a)(c) and 815 ILCS 205/4, or in the alternative, for interest on such principal sum at the rate of 5% per annum, pursuant to 815 ILCS 205/2;

c)   For such other and further relief as the Court deems just and proper.

Dated:  February 27, 2024

Respectfully submitted,

LAW OFFICES OF STEPHENSON,
ACQUISTO & COLMAN, INC.

By:   /s/  *Mallory G. McTarnaghan*          _
       One of the Attorneys for Plaintiff
       NORTHWESTERN MEMORIAL
       HEALTHCARE

Marcus R. Morrow, Esq., ARDC #6317812
Kenneth J. Dusold, Esq. ARDC #6320561
Mallory G. McTarnaghan, Esq., ARDC #6338777

FILED DATE: 2/29/2024 2:29 PM    2024L002248

Firm ID. #62848

LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC. (62848)
20 N. Clark St., Suite 3300
Chicago, IL 60602
Phone: (312)-626-1870
Fax: (818)-559-5484
mmorrow@sacfirm.com
kdusold@sacfirm.com
mmctarnaghan@sacfirm.com