UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORTHWESTERN MEMORIAL HEALTHCARE, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 24-cv-2768 |
| v. | ) ) | Hon. Steven C. Seeger |
| BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA, INC. and DOES 1 THROUGH 25, INCLUSIVE, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION AND ORDER**

This case involves an attempt by Northwestern Memorial Healthcare to obtain payment from an out-of-state insurance company for treatment of five out-of-state patients.

Northwestern Memorial Healthcare has a contract with an Illinois-based member of the Blue Cross Blue Shield corporate family, named Health Care Services Corporation d/b/a Blue Cross Blue Shield of Illinois. The contract requires Northwestern to provide medical care to patients in the Blue Cross Blue Shield system.

That obligation includes treatment of out-of-state patients with insurance from other Blue Cross Blue Shield entities. In that situation, Northwestern will submit a claim to Blue Cross Blue Shield of Illinois. Blue Cross Blue Shield of Illinois, in turn, will submit the claim to the out-of-state insurer. If the claim is legitimate, the out-of-state insurer will pay Blue Cross Blue Shield of Illinois, and Blue Cross Blue Shield of Illinois will pay Northwestern.

Northwestern provided care to five patients from Georgia, and all of them have insurance with Blue Cross Blue Shield Healthcare Plan of Georgia. Blue Cross Blue Shield of Georgia authorized the treatment in advance. But when the time came for payment, Blue Cross Blue Shield of Georgia balked at the request, and paid nothing.

Northwestern responded by filing a two-count complaint against Blue Cross Georgia. Northwestern brings a breach-of-contract claim, alleging that it had an implied contract with Blue Cross Blue Shield of Georgia. Northwestern also brings an unjust enrichment claim. Blue Cross Blue Shield of Georgia, in turn, moved to dismiss.

For the following reasons, the motion to dismiss is granted.

**Background**

At the motion-to-dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Before diving in, this Court must offer a brief sidebar about the use of acronyms. Not everyone on the planet enjoys reading acronyms. They're ugly, and potentially confusing. Everyone likes brevity (especially judges). But not everyone enjoys a mouthful of vegetable soup.

The parties refer to Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. as "BCBSGA." That's much shorter, but it's a little too short. Getting bludgeoned by so many letters, cramped together like they met a trash compactor, violates the senses of the reader.

One wonders how to pronounce "BCBSGA," except by calling out the letters one by one. That's cumbersome. It's not exactly wordy, but it's letter-y. Calling that entity "Blue Cross Blue Shield of Georgia" is easier on the eyes. Or better yet, "Blue Cross Georgia" gets the point across, with less typing.

Another example is Healthcare Services Corporation d/b/a Blue Cross Blue Shield of Illinois, which the parties call "BCBSIL" (which doesn't exactly roll off the tongue) or "HCSC." That's a lot of consonants.

The latter acronym might remind the reader of the bank, HSBC. So maybe "Healthcare Services" is better. Or better yet, in the spirit of uniformity, "Blue Cross Illinois" seems easier to swallow and digest, and saves work for the fingers.

One clunky acronym, viewed in isolation, may not be the end of the world. But stringing together several clunkers can give the reader a strong urge to flee the page. A paragraph that discusses BCBSGA's interactions with HCSC makes eyes glaze over, and creates a feel that the reader is ingesting computer code.

"Blue Cross Georgia" and "Blue Cross Illinois" are short and sweet. Everyone will know what we're talking about. And no one will choke on letter-salad.

Northwestern Memorial Healthcare operates hospitals and provides medical care in Illinois. *See* Cplt., at ¶ 3 (Dckt. No. 1-1). Northwestern has a contract with Blue Cross Illinois, a non-party to this lawsuit. Blue Cross Illinois is a member of the national Blue Cross Blue Shield Association. So is the defendant, Blue Cross Georgia.

The Blue Cross Blue Shield Association is the head of a collection of health insurance companies spread across the country. One of the benefits of the insurance is the ability to get treatment anywhere, even if the insured is in another state. *See generally Health Care Serv.*

2

*Corp. v. Methodist Hosps. of Dallas*, 814 F.3d 242, 246–47 (5th Cir. 2016) (describing how the insurance network operates between different Blue Cross entities).

So, for example, someone with insurance from Blue Cross Illinois can get treatment in another state after presenting what's called the "Blue Card" to the medical provider. The out-of-state medical provider will have a contract with the out-of-state Blue Cross insurer, and that contract will govern the payment to the medical provider.

The out-of-state medical provider will charge the out-of-state Blue Cross insurer, who then will send the bill to Blue Cross Illinois. In the end, if the claim is covered, Blue Cross Illinois will pay the claim. Blue Cross Illinois will pick up the tab, for a simple reason – Blue Cross Illinois is the insurer of the Illinois patient.

On the flipside, out-of-state patients with insurance from out-of-state Blue Cross insurance companies can get treatment in Illinois. They simply need to present their Blue Card to the medical provider in Illinois. *See* Cplt., at ¶ 29 (Dckt. No. 1-1). And then, Blue Cross Illinois will process the claim, under a contract with the medical provider. *Id.*

Northwestern doesn't have a contract with each of the separate members of the Blue Cross Blue Shield Association. Or, at the very least, the complaint in question doesn't say that it does. Instead, Northwestern has a contract with Blue Cross Illinois, and that contract governs payment for medical care provided to any patient in the Blue Cross system.

The contract with Blue Cross Illinois expressly applies to the treatment of out-of-state insureds with coverage from out-of-state Blue Cross entities. The contract requires Northwestern to treat "individuals belonging to health plans financed, sponsored, and/or administered by member companies belonging to the national Blue Cross Blue Shield Association." *Id.* at ¶ 26; *see also id.* at ¶ 27 ("Although BCBS OF GA was not a signatory to or obligee of the Contract, the Contract nonetheless bound NMHC to treat BCBS OF GA's beneficiaries.").

"[E]ven though BCBS OF GA never signed the Contract nor is obligated under the Contract, [Northwestern] must nevertheless medically treat BCBS OF GA members and accept payment, in full, from such member companies, with the payment received conforming to the rates found within the Contract." *Id.* at ¶ 28.

The contract also sets discounted rates that Blue Cross Blue Shield Association member companies (like Blue Cross Illinois and Blue Cross Georgia) would pay for services. *Id.* at ¶ 27. Northwestern must accept those discounted rates as payment in full. *Id.*

That's the overarching structure of the insurance arrangement for members of the Blue Cross Blue Shield Association. The dispute at hand is about the fact that Northwestern didn't get paid for treatment that it gave to five people from Georgia.

Northwestern provided medical care to five patients with insurance from Blue Cross Georgia. *Id.* at ¶ 12. The treatment took place at various times from 2018 to 2021. *Id.* at ¶ 11. A few of them stayed in the hospital for a couple days, and the others received out-patient care.

Before Northwestern provided the treatment, Blue Cross Georgia authorized the services as "medically necessary." *Id.* at ¶¶ 13–14, 36.

Northwestern later submitted the claims for payment, but Blue Cross Georgia denied all five claims. *Id.* at ¶¶ 18–19. The complaint doesn't include very many details about why, exactly, Blue Cross Georgia denied the claims (which is fine). An attached spreadsheet describes the reasons as "authorization," "takeback," "untimely," and "medical necessity." *See* Spreadsheet (Dckt. No. 1-2).

Northwestern responded by filing a two-count complaint. But Northwestern didn't sue Blue Cross Illinois, meaning the insurer on the other end of the contract. Instead, Northwestern sued Blue Cross Georgia.

The first claim is a breach-of-contract claim. Northwestern alleges that it had an implied-in-fact contract with Blue Cross Georgia. Northwestern acknowledges that it does not have an express contract with Blue Cross Georgia. But Northwestern claims that Blue Cross Georgia "knew and understood that NMHC rendered such treatment with the expectation of being paid under the Contract," meaning the contract with Blue Cross Illinois. *See* Cplt., at ¶ 34 (Dckt. No. 1-1).

Northwestern seeks $242,886.26, in damages on the breach-of-contract claim, which is the amount that it would have received under the local Blue Card. *Id.* That is, Northwestern claims that Blue Cross Georgia owes $242,886.26 because that's the price of the services at the discounted rate in Northwestern's contract with Blue Cross Illinois.[1] *Id.* at ¶¶ 26, 33.

The second claim is an unjust enrichment claim. Northwestern seeks damages for the services under the "reasonable and customary" rate, totaling $139,573.85. *Id.*

Blue Cross Georgia moved to dismiss on a few grounds, including a lack of personal jurisdiction. *See* Mtn. to Dismiss (Dckt. No. 8). Blue Cross Georgia later withdrew that argument. *See* 7/8/24 Order (Dckt. No. 23). The only remaining issue is whether the complaint states a claim.

As an aside, one has to wonder why Northwestern didn't file suit against Blue Cross Illinois. After all, Blue Cross Illinois is on the other end of the contract.

Maybe that contract contains a dispute-resolution provision, like mandatory arbitration, that Northwestern is trying to get around. Or, maybe that contract limits Northwestern's remedies some other way. Or maybe there is some other explanation.

---

[1] By the look of things, Northwestern's filings have some dissonance when it comes to the amount of damages that it seeks. The complaint says that Northwestern seeks $242,886.26, which is the amount owed under the "discounted rates under the Contract." *See* Cplt., at ¶ 43 (Dckt. No. 1-1). But the attached spreadsheet pegs the number at $67,997.65, and that number is the amount "underpaid per local Blue Card." *See* Spreadsheet (Dckt. No. 1-2). Maybe there is a good explanation for the fluctuation. In any event, the difference doesn't matter here and now, because a complaint doesn't have to pin down the amount of damages. The amount in controversy for jurisdictional purposes isn't an issue.

Whatever the reason, this Court takes the complaint as it finds it. Blue Cross Georgia is here, but Blue Cross Illinois isn't.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678.

## Analysis

### I. Breach of Contract (Count I)

The first claim is a breach-of-contract claim. Northwestern has no express contract with Blue Cross Georgia, so it can't get in through the front door. Instead, Northwestern tries to get in through the back door by alleging that it had an implied-in-fact contract.

The claim fails for a simple reason. Northwestern doesn't allege consideration for the would-be implied-in-fact contract. In fact, the complaint shows a lack of consideration.

A good example of an implied-in-fact contract is a trip to the barber shop. Most of us have sat down in a barber's chair and gotten a trim, without hashing out the terms in advance. After getting a trim, a customer can't stand up, walk out, and insist that no contract existed. The customer signed up by sitting down. Any argument about a non-existent contract wouldn't have a leg to stand on.

"[T]o plead breach of an implied-in-fact contract in Illinois, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Archey v. Osmose Utils. Servs., Inc.*, 2022 WL 3543469, at *2 (N.D. Ill. 2022) (quoting *Hess v. Bresney*, 784 F.3d 1154, 1158–59 (7th Cir. 2015)).

A contract requires mutual assent (meaning an offer and acceptance, showing a meeting of the minds) and consideration. *See, e.g., Medline Indus., Inc. v. Ram Med., Inc.*, 892 F. Supp. 2d 957, 969 (N.D. Ill. 2012) ("The elements of a contract, taught like the ABC's to first-year law students, are offer, acceptance, and consideration.") (quoting *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996)); *see also* 1 Williston on Contracts § 1:1 (4th ed. 1990) (similar).

5

Consideration is the give-and-take part of a contract. A contract is not a one-sided affair – it is an agreement for an exchange. Each party needs to give something and get something. Without a back-and-forth, it's not a deal.

Consideration doesn't take a lot. Even a peppercorn will do. But it must be *something.* And that something must be something new. An old, preexisting duty can't give rise to a new contract.

A promise to do something that the party already has a duty to do is not consideration. *See, e.g.*, *Dolmage v. Combined Ins. Co. of Am.*, 2016 WL 754731, at *9 (N.D. Ill. 2016) ("Black letter law teaches that a promise to do or to pay something that the promisor is already bound to do or to pay provides no consideration for the other party's promise in exchange, so that the other party's promise is not legally enforceable.") (citation omitted); *Country Mut. Ins. Co. v. Olsak*, 216 N.E.3d 291, 307 (Ill. App. Ct. 2022) ("The preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration as there is no detriment.") (citations omitted).

Simply put, "[c]onsideration cannot flow from an act performed pursuant to a preexisting legal duty." *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 589 (N.D. Ill. 2020), *aff'd*, 73 F.4th 502 (7th Cir. 2023).

Northwestern's claim fails for lack of consideration. Northwestern alleges that it provided consideration by providing service to the five patients. But Northwestern already had a preexisting duty to provide medical care to those patients. Northwestern's contract with Blue Cross Illinois required Northwestern to treat anyone with Blue Cross insurance, including insureds covered by Blue Cross Georgia.

The complaint itself makes that point. Northwestern admits that its contract with Blue Cross Illinois "obligated [Northwestern] to medically treat individuals belonging to health plans financed, sponsored, and/or administered by member companies belonging to the national Blue Cross Blue Shield Association," including Blue Cross Georgia. *See* Cplt., at ¶ 26 (Dckt. No. 1-1). And again: "Although BCBS OF GA was not a signatory to or obligee of the Contract, the Contract nonetheless bound NMHC to treat BCBS OF GA's beneficiaries." *Id.* at ¶ 27; *see id.* at ¶ 28.

That preexisting duty sinks Northwestern's claim. Northwestern had a preexisting legal duty to treat patients covered by insurance from Blue Cross Georgia. So the act of providing medical care to those five patients did not create a new, implied-in-fact contract with Blue Cross Georgia. Northwestern did what it already had a duty to do.

Northwestern contends that the medical care constituted consideration because Northwestern didn't have to provide care for free. That is, Northwestern argues that it didn't have a duty to provide medical care unless it got paid. So, by providing care without getting paid, Northwestern provided something that it had no obligation to do. *See* Pl.'s Resp., at 8 (Dckt. No. 24) ("NMHC's duty [to treat] is contingent on the actions of the non-[HCSC] insurer: namely, that it will make payment for rendered services at the discounted rates included in the

6

[HCSC] contract. Absent receipt of proper payment for the medical services, NMHC's obligation to provide medical services to HCSC members does not actually exist.").

That argument mixes contract formation with contract performance. It is true that a party to a contract doesn't have to perform if the other party doesn't perform. *See* Restatement (Second) of Contracts § 238 (Am. L. Inst. 1981); *see also* 13 Williston on Contracts § 38:11 (4th ed. 1990). But a failure to perform by one party does not mean that a contract never existed in the first place. The fact that Party B didn't perform does not mean that Party A and Party B did not have a contract.

And more importantly, unilateral performance does lead to the creation of a contract with a third party. The fact that Party A performed under its contract with Party B doesn't mean that Party A now has a contract with non-Party C.

Northwestern's performance, in and of itself, does not mean that it had a contract with Blue Cross Georgia. Maybe Northwestern didn't get paid. But the lack of payment does not mean that Blue Cross Georgia had a contractual duty to pay.

As a final salvo, Northwestern argues that a promise to give a benefit to a third-party beneficiary can constitute consideration. That's true, but beside the point.

Person A can enter into a contract with Person B to provide something of value to Person C. If Person A promises to help Person C, that promise can support a contract with Person B. Person B gets something out of the deal – a commitment by Person A to do something for Person C.

That's not the situation here. Northwestern already promised to treat patients covered by Blue Cross insurance. The contract with Blue Cross Illinois already created that legal duty. So providing care to patients with insurance from Blue Cross Georgia didn't offer anything new.

Plus, a promise to help a third-party beneficiary doesn't make the third-party beneficiary a party to the contract. A third-party beneficiary might have rights under a contract. But a third-party beneficiary isn't bound by the contract. *See, e.g.*, *Motorsport Eng'g, Inc. v. Maserati SPA*, 316 F.3d 26, 29 (1st Cir. 2002) ("[T]he third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either.") (citing E. Allen Farnsworth, Contracts § 10.9, at 773 (1990)); Restatement (Second) of Contracts § 304 (Am. L. Inst. 1981) (same). You can't breach an agreement that you never made.

In sum, Northwestern has failed to state a claim for breach of an implied contract with Blue Cross Georgia.

## II.     Quantum Meruit (Count II)

The second claim is unjust enrichment, which is also called quantum meruit. Northwestern claims that Blue Cross Georgia must pay for the services that the five patients received, even if there is no contract between Northwestern and Blue Cross Georgia.

7

Quantum meruit exists to prevent the unjust enrichment of a defendant who received a benefit in the absence of a contract. "The term quantum meruit means literally 'as much as he deserves' and is an expression that describes the extent of liability on a contract implied in law (also called a 'quasi-contract'); it is predicated on the reasonable value of the services performed." *Archon Constr. Co., Inc. v. U.S. Shelter, LLC*, 78 N.E.3d 1067, 1074 (Ill. App. Ct. 2017) (citation omitted). It is a "claim for the value of benefits provided without a contract." *See Quantum Meruit*, Black's Law Dictionary (12th ed. 2024).

To state a claim of quantum meruit under Illinois law, a plaintiff must show "(1) that [it] performed a service to benefit the defendant; (2) [it] performed the service non-gratuitously; (3) the defendant accepted [its] services; and (4) no contract existed to prescribe payment for this service." *Marcatante v. City of Chicago*, 657 F.3d 433, 443 (7th Cir. 2011) (citing *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 931 N.E.2d 810, 825 (Ill. App. Ct. 2010)).

Blue Cross Georgia moves to dismiss the quantum meruit claim on three grounds. First, it argues that quantum meruit is unavailable as a remedy when an express contract covers the subject matter. *See* Def.'s Mem., at 13 (Dckt. No. 9). Second, Blue Cross Georgia contends that Northwestern did not provide a benefit to Blue Cross Georgia by giving medical care to the five patients. *Id.* And third, Blue Cross Georgia says that ERISA preempts the state-law claim of quantum meruit. *Id.* at 14–15.

Blue Cross Georgia hits paydirt on its first argument. The express contract between Northwestern and Blue Cross Illinois precludes Northwestern's quantum meruit claim against Blue Cross Georgia.

In a nutshell, a contract expressly covers the arrangement between Northwestern and the Blue Cross entities. If Northwestern didn't receive what it was entitled to receive, then Northwestern must pursue a remedy under that contract. The fact that Blue Cross Georgia isn't a party to that contract makes no difference, because the contract expressly contemplates services by each of the Blue Cross entities. Simply put, a contract covers the subject matter, so a non-contractual remedy isn't available.

As a starting point, a party cannot seek non-contractual remedies from the other party to a contract based on the other party's failure to perform. "[A] party that has made a contract with another cannot simply disregard the contract and claim restitution from the other party for performance rendered under the contract." *See* Farnsworth, *Contracts*, at § 2.24 (discussing the overlapping concepts of restitution, unjust enrichment, and quantum meruit). Contractual remedies govern the terrain for a breach of contract.

That principle applies to non-parties, too. "Nor can a party that has made a contract with another generally disregard the contract and claim restitution from a third person for performance rendered under the contract, even if the third person has benefited from that performance." *Id.*

8

In other words, the existence of an express contract prevents an unjust enrichment claim *based on work done according to that contract*, even if the claim is against a non-party to the contract.

The treatise offered a helpful illustration. "Suppose that an owner of land makes a contract with a general contractor for the construction of a building, and the general contractor in turn makes another contract with a subcontractor for the plumbing work. Then suppose that the subcontractor does the plumbing work, but the general contractor fails to pay. If the owner has not yet paid the general contractor, does the subcontractor have a claim in restitution directly against the owner for the benefit conferred on the owner by the plumbing work? The answer is generally no." *Id.*

Illinois courts hew the same line. The question is whether a contract covers the subject matter, not whether the unjust enrichment claim is against a non-party to the contract. "[T]he remedy of unjust enrichment based on a quasi-contract is not available when an express contract exists *concerning the same subject matter*." *C. Szabo Contracting, Inc. v. Lorig Const. Co.*, 19 N.E.3d 638, 645 (Ill. App. Ct. 2014) (emphasis added) (citation omitted). That rule applies even when the defendant was not a party to the contract because "when work is done under a contract, a suit generally must be between the parties to the contract." *Id.* (citing *Daley v. G'Sell*, 430 N.E.2d 556, 559 (Ill. App. Ct. 1981)).

As a result, "a party performing pursuant to a contract who is disappointed by its co-party's failure to pay generally cannot turn to a third party for compensation." *Id.* (citing *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 812 N.E.2d 419, 427 (Ill. App. Ct. 2004)); *see also Daley*, 430 N.E.2d at 559 ("It is well-established law in this jurisdiction that where work is done under a contract, the suit must be between the parties to the agreement; third parties are not liable on the basis of an implied undertaking even if they are benefited by the work."); *Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 739 (7th Cir. 1990) ("[I]f you do work pursuant to a contract with X, you don't expect that Y, a nonparty, will pay you if X defaults, merely because Y was benefited by your work.") (citation omitted).

"Simply because a third party has benefited from the work does not make that party liable." *C. Szabo Contracting*, 19 N.E.3d at 645. "[A] party who performs services under a contract cannot sue third parties for unjust enrichment merely because they benefit from that performance." *RBS Citizens, N.A. v. Bentley Motors, Inc.*, 2012 WL 1565457, at *3 (N.D. Ill. 2012) (citing *Goldstick v. ICM Realty*, 788 F.2d 456, 467 (7th Cir.1986)); *see also Brown v. Sears Roebuck & Co.*, 2002 WL 31433395, at *2 (N.D. Ill. 2002) ("[The defendant] correctly argues that plaintiffs must allege a cognizable agency liability theory to state a prima facie case of unjust enrichment based on [the defendant] receiving the benefit of plaintiffs' labor. Otherwise, [the defendant] is *simply a third party that cannot be held liable* for reaping the benefits of the work performed by plaintiffs in accord with their contractual obligations to [the co-defendant].") (emphasis added); Restatement (First) of Restitution § 110 (1937) ("A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.") (cited favorably in *C. Szabo Contracting*, 19 N.E.3d at 645).

9

So too here. Northwestern cannot bring an unjust enrichment claim against Blue Cross Georgia "simply because" Blue Cross Georgia "has benefited from the work" under the contract. *C. Szabo Contracting*, 19 N.E.3d at 645. An "express contract exists concerning the same subject matter." *Id.*

The contract at hand contemplated that Northwestern would receive payment for providing medical care to members of the Blue Cross insurance network. If Northwestern didn't receive payment as required, then Northwestern can pursue a remedy under that contract.

Simply put, Northwestern must pursue contractual remedies against the contracting party, not non-contractual remedies against the non-contracting party.

That said, another court in this district agreed with Northwestern and recognized an unjust enrichment claim in a similar case against a Blue Cross entity. *See Northwestern Memorial Healthcare v. Anthem Blue Cross of California*, 2025 WL 2306814, at *4 (N.D. Ill. 2025) (ruling that Northwestern's *quantum meruit* claim could go forward, because "no written contract" between Northwestern and the out-of-state insurer "govern[ed] their relationship with each other"). After surveying the case law, this Court lands in a different place.

Northwestern relies too heavily on *Archon Construction Company, Inc. v. U.S. Shelter, LLC*, 78 N.E.3d 1067 (Ill. App. Ct. 2017). The court in *Archon* simply acknowledged that a contracting party cannot bring a quantum meruit claim against the other contracting party for non-performance under the contract. The court didn't address whether a contracting party can bring a quantum meruit claim against a non-party.

Northwestern also relies on an older Seventh Circuit decision that recognized an unjust enrichment claim when the non-party "enticed" the work. *See Midcoast Aviation, Inc. v. General Electric Credit Corporation*, 907 F.2d 732, 739 (7th Cir. 1990).

*Midcoast Aviation* has received a cold reception from Illinois courts, who have questioned whether it accurately reflects Illinois law. "No Illinois case has relied on *Midcoast Aviation* to allow a contracting party to pursue quasi-contractual relief from a third party who benefitted from the contracting party's performance." *See C. Szabo Contracting*, 19 N.E.3d at 645–46; *see also id.* (suggesting that it was unclear "whether *Midcoast Aviation* presents an accurate summation of Illinois law"). And in any event, the complaint at hand doesn't allege that Blue Cross Georgia enticed the performance. At most, it signed off on the treatment as medically necessary.

In sum, Blue Cross Georgia is not a party to the contract, but it isn't a complete stranger, either. It's not under the contract, but it's under the contractual umbrella.

Northwestern's contract with Blue Cross Illinois contemplated that Northwestern would receive compensation for treating out-of-state patients insured by out-of-state Blue Cross insurers. If Northwestern didn't receive payment under the contract, then Northwestern's remedy is to seek relief under that contract.

**III.     Preemption**

Finally, Blue Cross Georgia argues that ERISA preempts four of Northwestern's five claims.  *See* Def.'s Resp., at 14 (Dckt. No. 9).

ERISA has "two distinct and powerful preemption provisions:  complete preemption under ERISA § 502, 29 U.S.C. § 1132, and conflict preemption under ERISA § 514, 29 U.S.C. § 1144."  *Halperin v. Richards*, 7 F.4th 534, 540 (7th Cir. 2021).

"Complete preemption, really a jurisdictional rather than a preemption doctrine, confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim."  *Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health and Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008).

Complete preemption essentially turns a state-law claim into a claim under federal law. *Id.*  "[T]he ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (citation omitted).

"Conflict preemption, unlike complete preemption, actually is a true preemption doctrine."  *Id*. at 601.  Conflict preemption can serve as a defense to a state-law claim.  *Id*.

None of the parties believe that complete preemption applies.  *See* Def.'s Submission (Dckt. No. 30).  This Court agrees.  But Blue Cross Georgia contends that conflict preemption applies.

For conflict preemption under section 514, ERISA preempts "any and all State laws" that "relate to any employee benefit plan" covered by ERISA.  *See* 29 U.S.C. § 1144(a).  The words "relate to" are key.  *See Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 504 (7th Cir. 2011).

"A state law claim 'relates to' an ERISA plan 'if the claim requires the court to interpret or apply the terms of' that plan."  *Northwestern Mem'l Healthcare v. Anthem Blue Cross of Cal.*, 2025 WL 2306814, at *4 (N.D. Ill. 2025) (Chang, J.) (quoting *Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998)).

In other words, the question turns on whether a district court must interpret the ERISA plan to resolve the case.  Here, if this Court must interpret an ERISA plan to decide Northwestern's state-law claims, then ERISA preempts those claims under section 514.  But if this Court does not need to interpret an ERISA plan, then Northwestern's state-law claims are not preempted.

Here, by the look of things, this Court does not need to interpret the ERISA plan. Northwestern alleged in its complaint that Blue Cross Georgia pre-authorized the treatment of

11

the patients. If that's right, then this Court would not need to get into the issue of coverage, and would not need to interpret the plan.

Maybe that allegation wouldn't pan out. Maybe Blue Cross Georgia would argue someday that it didn't authorize the treatment. And maybe it would argue that the treatment isn't covered at all.

Even so, that possibility isn't a question for today. As things stand, the complaint doesn't state a claim for breach of an implied contract, or for quantum meruit. So there is no need to get into whether conflict preemption would apply down the road.

## Conclusion

For the foregoing reasons, Defendant Blue Cross Georgia's motion to dismiss is hereby granted.

Date: September 30, 2025

Steven C. Seeger
United States District Judge